McQUILLEN *v.* REAL-ESTATE EXCHANGE & AUCTION ROOM, Limited.

(*Supreme Court, General Term, First Department.* June 26, 1891.)

REAL-ESTATE EXCHANGE—"STANDS" NOT ASSIGNABLE.

    A "stand" in the auction room of the Real-Estate Exchange & Auction Room, Limited, of 59 Liberty street, N. Y., cannot be sold or assigned by a member of the exchange who has sold his stock, even to another member; the right to the stand being strictly personal, under rule 8 of the exchange, which provides that "no auctioneer shall be disturbed in the occupancy of the stand * * * for the term of five years, provided he pays such annual rent as may be charged therefor, and remains a member of the exchange and an auctioneer."

Appeal from special term, New York county.

Action by James S. McQuillen against the Real-Estate Exchange & Auction Room, Limited. From a judgment dismissing the complaint on the merits, plaintiff appeals.

Argued before BARRETT and PATTERSON, JJ.

*Truax & Crandall,* for appellant. *Strong & Cadwalader,* (*John L. Cadwalader,*) for respondent.

BARRETT, J. There is an elaborate discussion in the briefs submitted upon this appeal of the question whether Levy, the plaintiff's assignor, took a lease from the defendants or a mere license. In our judgment, it is not necessary to decide this question definitely, for the reason that, even if the agreement in question be treated as a lease, the plaintiff must fail. At the same time we must confess that our judgment inclines in favor of the plaintiff's contention on that head, so far, at least, as to hold that Levy, by the transaction disclosed, secured a vested right of occupancy with regard to the stand in question, which equity would enforce. The real question, however, is as to the precise character of that vested right. We think, upon the whole, that it was personal and non-assignable. A brief statement of the facts will suffice to support this conclusion: The defendant is a corporation, organized as a real-estate exchange. It has a great many members, and on its premises there is a general auction or sales room, with a number of special stands for the use of auctioneers who are its members. These stands are of considerable value, and their possession confers upon the occupants special priviliges not enjoyed by members generally. Under the defendant's rules, the choice of these stands is sold at auction, and licensed auctioneers only, who are members of the exchange, are allowed to compete therefor. There is, however, also a general stand, called the "President's Stand," from which sales can be made by auctioneers who have not rented any of these special stands. The rule of the exchange with regard to the special stand is as follows: "(6) No auctioneer shall be disturbed in the occupancy of the stand,

the choice of which has been purchased by him, for the term of five years, provided he pays such annual rent as may be charged therefor, and remains a member of the exchange and an auctioneer."

In April, 1887, the defendant published the following notice with regard to two of these special stands:

"Notice is hereby given that the choice of the stands now occupied by Messrs. William Kennelly & Bro. and Smith & Carrigan at the Real-Estate Exchange and Auction Room, Limited, will be submitted to competition at the exchange on Monday, the 18th inst., at 3:30 P. M., on the following terms: The purchaser of such choice will be entitled to occupy the stand for a term of five years, from the 1st of May, 1887, provided that he pays such annual rent as may be charged therefor, and remains a member of the exchange and an auctioneer.                    B. HARDWICK, Manager."

Levy's firm was the highest bidder for the choice of one of these stands, and upon their payment of the agreed premium they received from the defendant the following receipt:                    "NEW YORK, April 18, 1887.

"Messrs. L. Tannebaum & Co., 92 Spring St., to the Real-Estate Exchange and Auction, Limited.

"To choice of stand sold on terms of notice, $850.00.

"Pay April 18, '87.

"THE REAL-ESTATE EXCHANGE AND AUCTION ROOM, Limited.
"Per E. S. K."

Under these circumstances, Levy went into occupancy of the stand which he chose, and he paid, directly and in advance, the annual rent fixed by the defendant for the years commencing May 1, 1887, and May 1, 1888. In the spring of 1889, Levy transferred to the plaintiff all his right, title, and interest in the stand, and the plaintiff's firm gave the defendant their check for the rent falling due on the 1st day of May, 1889, receiving, however, a receipt made out in the name of Levy. On the 5th of June, 1889, Levy transferred his stock in the defendant corporation, and on the 7th day of the same month he died. Levy was an auctioneer and a member of the exchange down to the time of the transfer of his stock, and, as such, he signed an agreement to abide by the by-laws of the corporation, and the rules and regulations established by the board of directors for the government of the exchange and auction room. The plaintiff is also an auctioneer and a member of the defendant corporation.

Upon this state of facts, it seems to us very clear that, however we may define Levy's rights, he took subject to three conditions: *First*, the payment of the annual rent; *second*, continued membership; and, *third*, continuance in the business of an auctioneer. These two latter conditions are entirely inconsistent with the assignability of his right of occupancy. They necessarily imply the purely personal character of the right which the exchange conferred upon him. Thus the transaction was in strict accordance with the eighth rule of the exchange, which we have already quoted, to which rule Levy and the plaintiff had both given their assent in writing. This rule was not only reasonable, but essential, to the preservation of the exchange and the protection of its members; for it would be destructive of such institutions if persons who never were members, or who, having been members, had ceased to be such, were permitted, under any pretense, to utilize its premises, and to enjoy its facilities. The strictly personal character of the right conferred is further evidenced by the tenth rule of the exchange, which provides that "a lessee of a stand may permit another member to use the same for auction purposes, and to place his name on the stand for that day." This limited privilege is entirely inconsistent with a general right of transfer, even to other members of the exchange. It is clear, therefore, that the moment Levy ceased to be a member his rights as a special standholder terminated. His rights here terminated with the transfer of the shares of stock which he was re-

quired to hold to entitle him to membership; and such rights, beyond all question, terminated with his death. The learned counsel for the appellant contends that even if the latter proposition be correct, yet the plaintiff took the remainder of the five-years term by the transfer prior to Levy's death. But Levy could not, under any circumstances, confer upon the plaintiff any other or greater right than he himself possessed. It would be a strange doctrine which would enable the assignee to retain possession for the remainder of the term, when, if the assignment had not been made, the assignor would have lost the right to retain such possession under the terms of his contract; in other words, that the assignee should take freed from the proviso specially imposed upon his assignor. But we need not dwell further upon this contention, as we place our judgment upon the distinct ground that the agreement in question was personal to Levy, and non-assignable. The defendant might not specially object to his utilizing the stand as he did while he continued to be an auctioneer and a member, (although the facts entirely fail to show either a substituted tenancy or an estoppel,) yet we have no doubt that it had a right, upon the cessation of his membership, to repossess itself of such stand, and to place it again in competition. The judgment appealed from should be affirmed, with costs.